UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE,
    Plaintiff

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
    Defendant

CASE NO: 3:22-cv-805-OAW

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Jane Doe,[1] *pro se*, for her Complaint alleges as follows:

### PARTIES

1. Plaintiff Jane Doe is citizen of the State of Connecticut, who presently resides within Hartford County.

2. Defendant U.S. Department of Homeland Security ("DHS") is a U.S. government agency, components of which include, *inter alia*, the DHS Office for Civil Rights and Civil Liberties, as well as the Transportation Security Administration ("TSA"). Defendant's address is 2707 Martin Luther King Jr. Ave, SE, Washington, DC 20528-0485.

3. Defendant has procured and continues to operate Advanced Imaging Technology ("AIT") millimeter wave machines with Automated Target Recognition (ATR) algorithms, pursuant to contract(s) with Leidos, formerly L-3 Communications.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331. This case involves questions of federal law, including the Fourth Amendment to the

---

1 Plaintiff is using the pseudonym Jane Doe in this Complaint. Plaintiff has simultaneously filed an *ex parte* motion to proceed under a pseudonym due to the sensitive nature of this Complaint. Plaintiff is prepared to file under seal a letter disclosing her legal name if requested to do so by this Court.

1

U.S. Constitution and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*, as well as a request for declaratory relief pursuant to 28 U.S.C. § 2201.

5. This is not an action pursuant to 49 U.S.C. § 46110 requesting this Court to affirm, amend, modify, or set aside any part of any TSA-issued order, nor are the claims within this action inextricably intertwined with a review of any such order.

6. Venue is proper in, and the Defendant is subject to the personal jurisdiction of, this Court, pursuant to 28 U.S.C. § 1391(e)(1)(C), because the Defendant is a U.S. government agency, the plaintiff resides in this District, and no real property is involved in this action.

## FACTS GIVING RISE TO RELIEF

7. Beginning in 2011, TSA, as a component of DHS, has operated AIT machines with ATR algorithms as part of screening at TSA security screening checkpoints.

8. The AIT machines require several steps to occur in the screening process. Some of these steps include: a passenger enters into the AIT machine; a TSA employee chooses a blue button or a pink button on the AIT machine's screen based on the employee's perception of the gender expression of the passenger in order to start the scanning process; and the AIT machine runs ATR algorithms to decide whether or not the individual being screened has an "anomaly" requiring a targeted pat-down procedure of that area, in which case the machine's display screen flags the body area of such an "anomaly" as part of ATR.

9. After the widespread adoption of AIT with ATR across the United States, several transgender women repeatedly found themselves in a nightmarish scenario, in which the AIT's ATR algorithms decided that many transgender women were security threats due to either having external genitalia that cisgender women do not have (if the operator pressed

the pink button) or having breasts of more typically female size while wearing bras (if the operator pressed the blue button). *See* Lucas Waldron and Brenda Medina, *When Transgender Travelers Walk Into Scanners, Invasive Searches Sometimes Wait on the Other Side*, PROPUBLICA (Aug. 26, 2019), https://www.propublica.org/article/tsa-transgender-travelers-scanners-invasive-searches-often-wait-on-the-other-side. *See also* Emma Eisenberg, *The TSA's Technology Is Discriminating Against Trans People*, Pacific Standard (Aug. 5, 2019), https://psmag.com/social-justice/tsa-technology-is-discriminating-against-trans-people.

10. To make matters all the more disturbing, the end result regardless of what button was pressed for these transgender women in paragraph 9 was a targeted pat-down of the most sensitive, intimate body locations possible for transgender women: the chest (including breasts) or the groin (including the buttocks, inner thighs, and borders of the external genitalia). *Id.*

11. As part of the AIT machine's ATR algorithms to decide whether or not the individual being screened has an "anomaly" requiring a targeted pat-down procedure, there is reliance on gender/sex stereotyping from the way it was designed to assume that female-perceived passengers have exclusively the anatomy of cisgender women passengers and that male-perceived passengers have exclusively the anatomy of cisgender men, without acknowledging that transgender people exist. *Id.*

12. As a result, the DHS/TSA reliance on sex/gender stereotyping behind the ATR algorithms has led to targeted, non-random administrative searches involving federal government

employees feeling transgender women's breasts, buttocks, inner thighs, or the borders of their external genitalia.

13. Upon information and belief, the situation described in paragraph 12 occurs on a near-daily basis in the United States.

14. On May 22, 2022, the Plaintiff personally experienced the results of sex/gender stereotyping from the AIT algorithms, while proceeding through TSA security screening at Chicago Midway International Airport, when she, as a transgender woman who went through the AIT machine with a female gender expression, was told she had an "[anomaly] in the groin" that required a targeted pat-down of that region.

15. During this incident on May 22, 2022, Defendant subjected Plaintiff to a non-random, targeted pat-down procedure involving, among other things, a TSA employee lifting the top edges of her skirt to feel her clothing at the waistline, feeling her buttocks, feeling her inner thighs, and making contact with the outer borders of Plaintiff's external genitalia with the back of the employee's gloved hands.

16. No prohibited items were found during the May 22, 2022, administrative search.

17. The only reason the targeted search occurred was due to the Plaintiff being a transgender woman, who due to the AIT ATR's reliance on gender/sex stereotyping was deemed to have an anomaly in the groin.

18. Plaintiff had been diagnosed with post-traumatic stress disorder ("PTSD") related to past sexual assaults before the events of May 22, 2022.

19. The events described in paragraph 15 were, for the Plaintiff, so reminiscent of one specific past sexual assault that the Plaintiff experienced in March 2020—which involved

4

an individual lifting her dress and making contact with her inner thighs while attempting to grope her external genitalia—that Plaintiff experienced psychiatric distress afterwards.

20. Plaintiff experienced dissociation during and after the events described in paragraph 15.

21. Plaintiff experienced significant psychiatric distress directly related to the May 22, 2022, incident in following the weeks, including episodes of dissociation, intrusive imagery, nightmares, and uncontrolled crying.

22. Due to the extent of Plaintiff's psychiatric distress, over the next two weeks, plaintiff was forced to use paid sick leave for one full-day, use two full days of scheduled paid time-off, and obtain permission to be excused early on a fourth day to obtain mental health care related to the incident.

23. Plaintiff is a member of a national health professional organization, and such as, is expected to travel for committee meetings. While Plaintiff is afraid to travel without appropriate relief in light of what occurred on May 22, 2022, she nevertheless anticipates being requested to travel to attend meetings taking place as soon as September 2022.

24. Plaintiff's duration of time on estrogen has started to make her facial features more feminine in appearance as of May 2022, especially when combined with wearing a mask and a head covering, and such, she reasonably anticipates the "pink button" for the AIT being pressed more often now than in the past, leading to a repeat of the circumstances in paragraph 15 if the AIT's ATR algorithms are not changed to avoid relying on gender/sex stereotypes.

25. Plaintiff is realistically threatened by a repetition of her experience when traveling in the future.

26. On June 13, 2022, Plaintiff asked the TSA Contact Center how to request a disability accommodation in advance of screening at an airport.

27. The same day, the TSA Contact Center responded with an answer asserting "All Passengers Must Be Screened" without any information on how to request a disability accommodation.

28. The same day, Plaintiff replied asking to confirm that TSA does not offer accommodations to participate in the screening process for passengers with disabilities.

29. The same day, the TSA Contact Center replied that there is an informational "helpline" that "provides information on screening procedures" to passengers with disabilities, and there is a Passenger Support Specialist position to provide accompaniment for helping passengers with disabilities proceed through the checkpoint.

30. At no point in Plaintiff's correspondence did the TSA Contact Center provide any information on how to request an accommodation/modification pursuant to Section 504 of the Rehabilitation Act.

31. TSA has previously represented publicly that it does not offer any disability accommodation/modification of the pat-down procedure of intimate body locations for passengers with PTSD, other than the simple options offered to all passengers regardless of disability status (e.g., a pat-down can be done in private or public, and it is possible to be accompanied by a companion if performed in private). One traveler with PTSD from sexual assault has said regarding TSA's approach to such situations, "If the only accommodation is the private room and telling you step by step how you will be violated, they need to go back to the drawing board." Robin Abcarian, *Column: A woman's past*

*abuse is triggered by a TSA pat-down at LAX. She wants some answers*, L.A. TIMES (Mar. 12, 2019), https://www.latimes.com/local/abcarian/la-me-abcarian-tsa-20190312-story.html.

32. As quoted by a media outlet, TSA has previously represented TSA's position on accommodations for PTSD in the setting of targeted pat-downs of intimate body locations as "if certain passengers cannot go through the process due to their disabilities, or due to other reasons, they simply won't be able to fly." Daphne Wester, *TSA to Court of Appeals: Some Passengers with Disabilities Won't Be Allowed to Fly*, Accessibility.com (Feb. 28, 2022), https://www.accessibility.com/blog/tsa-to-court-of-appeals-some-passengers-with-disabilities-simply-wont-be-allowed-to-fly.

33. Reasonable accommodations/modification of the targeted pat-down exist for Plaintiff. As some examples, reasonable accommodations/modifications for her with PTSD may include modifying the pat-down to avoid the step involving a stranger lifting clothing at the waistline and feeling inside of clothing at the waistline; using an alternative screening technology method such as a metal detector or an explosive trace detection device (such as on Plaintiff's hands); using an explosive detection animal; using an intelligence-based vetting process similar to trusted traveler programs; or any combination of the above.

34. As explained in paragraphs 35 to 41 below, the history of the development process for the AIT's ATR algorithms dates back 12 years from the first DHS presolicitation publication notice in March 3, 2010. However, as of May 22, 2022, the AIT with ATR algorithms continued to rely on sex/gender stereotyping.

35. On March 3, 2010, DHS published a presolicitation notice, stating, "TSL proposes to sponsor a spiral-based research and development effort that will improve upon commercially-available AIT systems to meet TSA requirements, using a system of ATR algorithms as an enabler. By exploiting the specific image features of known threats (i.e., guns, knives, improvised explosive devices, homemade explosives), ATR will aid security and efficiency at our nation's airport checkpoints." *Automatic Target Recognition (ATR) Algorithms for Advanced Imaging Technology (AIT) systems*, Notice ID AIT-ATR-TargetedBAA (Mar. 3, 2010), https://sam.gov/opp/47abe569e01d2401b5319e1897598dda/view.

36. In addition, the March 3, 2010, notice states, "[T]he framework will accommodate growth of the algorithms for the detection of a wider range of threats as the ATR capability is developed." *Id.*

37. On March 23, 2010, a Broad Agency Announcement ("BAA") by DHS was published. In the BAA, DHS specifies that the Scope of Work for the contractor involves developing, verifying, delivering, and installing ATR Algorithms. Specifically, DHS writes, "The ATR Algorithms development shall include algorithms, source code, and executable code in a common commercial programming language [...] and a method for loading .img files from a Government-provided disk[.]" In addition, DHS further writes, "The ATR Algorithms, when integrated with AIT, shall utilize advanced image processing techniques in order to automatically detect prohibited items [...] Development shall also include software upgrades that will be installed during scheduled and unscheduled maintenance." *Automatic Target Recognition Algorithms Development for Advanced*

*Imaging Technology*, Broad Agency Announcement, BAA 10-10 (Mar. 23, 2010), https://sam.gov/api/prod/opps/v3/opportunities/resources/files/4f23aa79020aa4e4efd55c848467b8f5/download.

38. The BAA text does not contain the words "gender," "sex," "female," "male," "man," "woman," "cisgender," or "transgender." *Id.*

39. The BAA did not yield a software-only solution separate from the hardware contractor. On September 6, 2011, pursuant to F.A.R. 16.505 (b)(2)(ii), DHS awarded a delivery order HSTS04-11-J-CT2079 under Contract Number HSTS04-10-D-ST2003 for the non-competitive purchase of AIT systems with ATR to L-3 Communications, combining together AIT systems with ATR with one contractor.

40. Upon information and belief, the contract requirements and functional requirement document for ATR did not explicitly require the contractor to use sex/gender stereotyping in its ATR algorithms. DHS always could have specified before or during the development of the ATR algorithms that the algorithms were not permitted to rely on gender/sex stereotyping in its determination of what is considered an anomaly, but did not do so.

41. Upon information and belief, DHS presently continues to operate AIT machines with ATR algorithms leading to disproportionate displayed anomalies in the breast and groin regions for transgender women.

42. Upon information and belief, the ATR algorithms, over the past 12 years, have led to disproportionate pat-downs of transgender women's breasts, buttocks, inner thighs, and

9

borders of external genitalia, as well as pat-downs in general, when compared to cisgender passengers.

43. Regardless of whether Plaintiff were to end up being selected for a targeted pat-down of an intimate area in the future, Plaintiff remains in fear of traveling by air without such a reasonable accommodation/modification from Defendant due to the risk that she may require another such pat-down that serves a trauma reenactment, especially when considering severity of the psychiatric symptoms that she experienced after the events of May 22, 2022, to which Defendant subjected her, as well as knowing that Plaintiff is not free to decline a pat-down procedure once it is requested without receiving a civil monetary fine of thousands of dollars, and that Defendant uses unpredictable screening methods that always makes Plaintiff realistically threatened by a repetition of her past experience.

## NATURE OF THE CASE

44. This action asserts that Defendant's targeted pat-downs of transgender women—such as the search performed on the Plaintiff on May 22, 2022—when performed due to the AIT algorithms' reliance on gender/sex stereotyping labeling transgender women's external genitalia as security threats, are unlawful searches pursuant to the Fourth Amendment due to being targeted, non-random searches by a U.S. government agency that lack a legitimate non-discriminatory justification for selection in these situations, leading to a disproportionate percentage of administrative searches (specifically, pat-down procedures) on transgender women.

45. This action additionally asserts that DHS violates Section 504 of the Rehabilitation Act—specifically, against Plaintiff—by refusing to provide any accommodation/modification to survivors of sexual assault who have been diagnosed with post-traumatic stress disorder ("PTSD") and require a reasonable accommodation/modification of the pat-down procedure when targeted at intimate, sensitive body sites that touching in certain manners would create a reenactment of past trauma and cause severe psychiatric distress, beyond the simple options DHS already offers all passengers with or without disabilities (e.g., a pat-down can be done in private or public, and the passenger can be accompanied by a companion), and as a result, Plaintiff, as an individual who requires such an accommodation/modification for equal access, lacks equal access. In addition, Defendant also violates Section 504 by refusing to provide information on how to request a disability accommodation before starting the security screening process, at which point the process cannot be discontinued without receiving a civil penalty.

## COUNT I:
## UNLAWFUL SEARCH IN VIOLATION OF THE
## FOURTH AMENDMENT TO THE U.S. CONSTITUTION

46. Plaintiff incorporates by reference as if fully set forth herein the contents of paragraphs 1 through 45, above.

47. Defendant's searches at TSA security screening checkpoints are administrative or special needs searches, which can be random or universal, not necessarily involving individualized suspicion.

48. Upon information and belief, Defendant uses the AIT as the initial universal screening method for most passengers, followed by a non-random, targeted pat-down if the AIT

flags an "anomaly," the latter of which will be termed "AIT-triggered secondary search" in Count I.

49. There is a privacy interest passengers have that is compromised by the AIT-triggered secondary, non-random, targeted pat-down, in that participants are not free to leave to decline the pat-down without being assessed a civil penalty, DHS relies on the AIT—which is known to use gender/sex stereotyping that wrongly and arbitrarily flags many transgender women as being security threats due to their genitalia—to determine which passengers being screened by the AIT require a targeted pat-down, and transgender passengers sometimes have their transgender status discovered involuntarily during the process of when a targeted pat-down of the groin is conducted.

50. The character of the intrusion imposed by the AIT-triggered secondary search is considerable for transgender women, as it involves federal government employees feeling transgender women's breasts, buttocks, inner thighs, or the borders of their external genitalia.

51. The efficacy of the AIT-triggered secondary search on transgender women in advancing the government interest is limited due to its entirely arbitrary nature based on deeming transgender women's external genitalia to be security threats, resulting in secondary searches that are not even advancing the government's interest in transportation security and a waste of time and resources.

52. DHS was aware of this problem with AIT-triggered secondary searches on transgender women since essentially the start of the AIT program, as well as its egregious nature in that it regularly led to administrative searches involving federal government employees

feeling transgender women's breasts or the borders of their external genitalia, resulting in multiple complaints from transgender travelers on this topic filed with the DHS Office for Civil Rights and Civil Liberties, yet this problem still has persisted in use to the date of the incident giving rise to this Complaint.

53. On May 22, 2022, the Plaintiff personally experience the results of sex/gender stereotyping from the AIT algorithms, while proceeding through TSA security screening at Chicago Midway International Airport, when she, as a transgender woman who went through the AIT machine with a female gender expression, was told she had an "[anomaly] in the groin" that required a targeted pat-down of that region.

54. During this incident on May 22, 2022, Defendant subjected Plaintiff to a non-random, targeted pat-down procedure involving, among other things, a TSA employee lifting the top edges of her skirt to feel her clothing at the waistline, feeling her buttocks, feeling her inner thighs, and making contact with the outer borders of Plaintiff's external genitalia with the back of the employee's gloved hands.

55. Plaintiff is realistically threatened by a repetition of her experience when traveling in the future.

56. Installing an update to the AIT's ATR algorithms themselves would fully remedy the unreasonable searches that transgender women travelers face, and such an update to the AIT's ATR algorithms would not require any change to any TSA-issued order (e.g., a Transportation Security Officer still could select a pink or blue button, but the AIT's ATR algorithms could be updated such that its determination of whether an "anomaly" is present is not based on sex/gender stereotyping regardless of which button is pressed).

## COUNT II:
## UNLAWFUL DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. 794

57. Plaintiff incorporates by reference as if fully set forth herein the contents of paragraphs 1 through 56, above.

58. Plaintiff is a person with a disability within the meaning of 29 U.S.C. 794.

59. The TSA security screening checkpoints at airports throughout the United States are a program or activity of Defendant, a federal government agency.

60. Plaintiff is otherwise qualified to participate in the program or activity of TSA security screening checkpoints.

61. Defendant discriminates against Plaintiff's participation in the program or activity by failing to provide information on how to request a disability accommodation before traveling and failing to provide a reasonable accommodation to allow Plaintiff equal access to participate in the program or activity.

62. On May 22, 2022, Defendant subjected Plaintiff to a set of actions that resembled patient's prior sexual assault for which she had previously been diagnosed with PTSD.

63. Defendant has previously stated publicly that it has a practice of refusing to offer any accommodation or modification to passengers with PTSD from sexual assault that is any different from the same options provided to passengers without disabilities (e.g., companion can be present to observe, pat-down can be done in public or private).

64. Defendant has not engaged in the interactive process with Plaintiff to determine a reasonable accommodation or modification for her disability of PTSD from sexual assault.

## DECLARATORY RELIEF ALLEGATIONS

65. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated her rights under the Fourth Amendment to the U.S. Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794. Plaintiff is informed and believes and thereon alleges that the Defendant denies these allegations. Declaratory relief is therefore necessary and appropriate.

66. Plaintiff seeks a judicial declaration of the respective rights and duties of the parties

## INJUNCTIVE RELIEF ALLEGATIONS

67. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein.

68. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff JANE DOE, requests the following relief:

69. Declare that AIT-triggered targeted pat-down administrative searches on transgender women violate the Fourth Amendment to the U.S. Constitution due to the reliance of the AIT ATR algorithms on gender/sex stereotyping considering transgender women's external genitalia to be anomalies requiring targeted pat-down procedures;

70. Order Defendant, its officers, agents, employees, and all others in concert or participation with it to use only ATR algorithms that do not systematically flag transgender passengers

as having "anomalies" due to transgender status, to the extent that such algorithms remain used in Defendant's security screening policies and procedures;

71. Order Defendant to provide Plaintiff with a reasonable accommodation/modification to allow Plaintiff to avoid being be excluded from participation in, or otherwise be subjected to discrimination, on the basis of patient's disability of PTSD from sexual assault, while undergoing TSA screening in airports—specifically, providing an accommodation/modification for Plaintiff's PTSD in the form of an alternative screening method or procedure that avoids having a stranger lift clothing at the waistline or placing hand(s) on the inside of Plaintiff's clothing when conducting a pat-down;

72. Such other and further relief as this court may deem just and proper.

## JURY DEMAND

73. Plaintiff respectfully demands a trial by jury of all matters so triable.

Respectfully submitted,

*Jane Doe*
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
Plaintiff *pro se*

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed in Hartford County, Connecticut, on June 22, 2022.

*[signature]*
Jane Doe, *pro se*