UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE,                                                                           Case No. 3:22-cv-00805-OAW

        Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,

        Defendant.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

The plaintiff, Jane Doe, submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint. For the reasons that follow, the defendant's motion should be denied, or, in the alternative, the applicable claim(s) transferred to the Second Circuit Court of Appeals pursuant to 28 U.S.C. § 1631.

## Argument

### I.   Legal Standard

"[W]hen reviewing *pro se* submissions, a district court should look at them with a lenient eye, allowing borderline cases to proceed." *Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005) (quoting *Fleming v. United States,* 146 F.3d 88, 90 (2d Cir. 1998) (per curiam)). "[A]s low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard." *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005). "As long as his mistakes do not prejudice his opponent, a plaintiff is entitled to trial on even a tenuous legal theory, supported by the thinnest of evidence." *Id.* at 124, 130 (2d Cir. 2005). This is even more so the case when "the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008).

When deciding a question of subject matter jurisdiction, courts are obligated to read the complaint broadly and draw all inferences from those allegations in the light most favorable to the plaintiff's argument regarding whether the court has subject matter jurisdiction. *Luckett v. Bure*, 290 F.3d 493, 499 (2d Cir. 2002) ("Luckett challenges both his transfer from the USAR to the IRR and the attendant loss of his civilian position. Reading his complaint *broadly and drawing all inferences from those allegations in the light most favorable* to Luckett, we cannot find *any* claims of discrimination that arise purely from his civilian employment") (emphasis added).

Challenges to subject matter jurisdiction pursuant to a Rule 12(b)(1) motion may be facial or fact-based. When a defendant argues a facial challenge, there is no evidentiary burden on the plaintiff. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden"). When a defendant makes a fact-based motion, the defendant proffers evidence beyond the plaintiff's pleading, to which the plaintiff may proffer countering evidence. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (internal citations omitted). The district court may then make findings of fact in aid of its decision as to standing, or find that the defendant's proffered evidence is immaterial due to not contradicting plausible allegations in the complaint sufficient for standing. *Id.* at 47, 57. When assessing whether a complaint is sufficient to demonstrate subject matter jurisdiction, the initial burden of proof on the plaintiff is not burdensome. *See Sheldon v. Galant*, 18-cv-06320(NSR), at *3 (S.D.N.Y. Dec. 6, 2019) ("Subject matter jurisdiction is allowed so long as the federal claim is colorable) (quoting *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996)) (internal quotation marks omitted).

With some exceptions, a person disclosing a substantial interest in a final aviation security order, in whole or in part, may apply for review of the order by filing a petition for review pursuant to 49 U.S.C. § 46110 in the court of appeals for the circuit in which the person resides. *Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014). In order to be final, the order must, *inter alia*, not be "tentative, open to further consideration, or conditional on future agency action." *Durso v. Napolitano*, Civil Action No. 10-02066 (HHK), at *5 (D.D.C. July 5, 2011) (quoting *City of Dania Beach v. Federal Aviation Administration*, 485 F.3d 1181, 1188 (D.C. Cir. 2007)). "[T]he courts of appeals have exclusive jurisdiction to affirm, modify or set aside such orders, and that all objections to such orders must be made in the courts of appeals or not at all." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 188 (2d Cir. 2001). "Because review by a court of appeals of an administrative order is generally limited to the issues considered by the agency during the prior administrative hearing, this test will generally serve as a proxy for the *City of Tacoma* test." *Id.* at 182, 188 n.9. In order to be considered inescapably intertwined with a review of such an order, the claim filed in district court must "attack[…] the matters decided by the administrative order" in order for the district court to be precluded from exercising subject matter jurisdiction. *Id.* at 182, 189. Notably, the "mere overlap of evidence and testimony adduced in the two proceedings" or "mere overlap of findings made by an ALJ and by a district court judge" are insufficient to preclude subject matter jurisdiction by a district court under the inescapable intertwinement doctrine. *Id.* at 182, 189.

The overall goal of the inescapable intertwinement doctrine is to prevent a plaintiff from seeking an injunction in a district court to enjoin the agency from taking the action required in its final administrative order. *See Durso v. Napolitano*, Civil Action No. 10-02066 (HHK), at *12

(D.D.C. July 5, 2011) ("If a plaintiff could proceed in the district court merely by asking for an injunction barring the agency from taking the action required by the order in question, then that purpose would be defeated"). Given that review is generally limited to matters considered in an administrative proceeding, this doctrine also serves to prevent duplication of the administrative record in district court factfinding, as the U.S. Supreme Court has explained:

> [S]tatutes that provide for only a single level of judicial review in the courts of appeals are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrative record — circumstances that are not present in pattern and practice cases where district court factfinding is essential [given the inadequate administrative record].

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 497 (1991) (internal quotation marks omitted).

Broad facial or constitutional challenges, as well as matters considered wholly collateral to review of a particular order, are considered outside the scope of the inescapable intertwinement doctrine. *See Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec.,* 43 F. Supp. 3d 4, 14-15 (D.D.C. 2014). *See also Merritt v. Shuttle, Inc.*, 245 F.3d 182, 189 n.11 (2d Cir. 2001), *citing Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994). *See also Gilmore v. Gonzales,* 435 F.3d 1125, 1133 n.9 (9th Cir. 2006) ("the district court maintains jurisdiction to hear broad constitutional challenges to Defendants' actions").

**II.    The Defendant's Motion Should Be Denied Where This Action Does Not Fall Under the Exclusive Jurisdiction of the Courts of Appeal.**

**A. The defendant does not proffer sufficient evidence that an administrative proceeding considered the matters in either claim, leading to issuance of a final agency order reviewable in a court of appeals pursuant to 49 U.S.C. § 46110.**

The defendant appears to be setting forth a fact-based challenge by introducing the existence of the non-public TSA Checkpoint Screening Standard Operating Procedures

("Checkpoint SOP"), proffering findings of fact on what is contained in the Checkpoint SOP from prior case law, and arguing that the two claims in the instant complaint should be read by the court—in contrast to the language used in the complaint—as requests for the court to modify the content of the Checkpoint SOP as it pertains to the procedural steps of requiring AIT scanning for most passengers followed by a targeted pat-down if the AIT scanner triggers an alarm. The defendant does not proffer affidavits/declarations or exhibits, but, instead, relies on findings of fact in prior case law. Most notably, aiming to establish that the Checkpoint SOP is a "document that governs how airline passengers and their personal property are screened at airport checkpoints, including by AIT and pat-downs" (Br.[1] at 5), the defendant cites *Ruskai v. Pistole*, 775 F.3d 61, 63 (1st Cir. 2014) to show that "the SOP governs AIT and pat-down screening" and *Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 3 (D.C. Cir. 2011) to show that "details of the screening process" are documented in the SOP (Br. at 5-6).

      A review of these two cases cited by the defendant shows that the cases describe the Checkpoint SOP as containing the procedural steps for the screening checkpoint. In *Elec. Privacy Info. Ctr.*, the opinion explains that TSA has been tasked by Congress to ensure that no one carries a dangerous items onto a commercial airline flight, and that TSA has documented the procedural steps for such screening in its Standard Operating Procedures. *Id*, 653 F.3d 1, 3 (D.C. Cir. 2011). In *Ruskai*, the opinion explains that TSA adopted a Checkpoint SOP that included the procedural steps of using AIT as the primary screening method, with a secondary method of a pat-down. *Ruskai v. Pistole*, 775 F.3d 61, 63 (1st Cir. 2014) ("SOP authorized the use of two types of AIT scanners as the primary methods of screening at U.S. airports, and adopted as a

---

1   Citations to the Brief (Br.) are citations to the Memorandum of Law in Support of Defendant's Motion to Dismiss Complaint.

secondary screen a new 'standard pat-down', which is an enhanced form of the previously used pat-down").

Specific to the Fourth Amendment claim, the first problem for the defendant's position is that the defendant has not proffered any evidence that the continuing development of the ATR algorithm by its contractor is done pursuant to any final aviation security order issued by TSA such that the content of the algorithm would be able to be challenged in a court of appeals pursuant to 49 U.S.C. § 46110. In order for district court subject matter jurisdiction to be precluded, there would need to be "formal administrative orders rather than informal policies or practices" on this topic before even considering whether the claim is a direct challenge or inescapably intertwined with such an order. *Brown v. Transp. Sec. Admin.*, Civil Action No. 20-64, at *4 (W.D. Pa. Mar. 30, 2021). The only facts the defendant has established from these two case citations is that the Checkpoint SOP is an order that requires screening at checkpoints to include procedural steps, which include AIT machines at the security checkpoint that can lead to pat-downs when an alarm happens when scanned. However, the procedural steps at the security screening checkpoint—involving AIT machines triggering secondary searches involving pat-downs—are not being challenged in this complaint in the Fourth Amendment claim; rather, it is sex/gender stereotyping in the ATR algorithm itself that is being challenged, which is what selects which passengers require additional scrutiny with a secondary search.

For both the Fourth Amendment and Rehabilitation Act claims, an additional problem is that the defendant appears to have posted a press release providing evidence that TSA is now operating under interim policies and procedures for screening of transgender passengers using AIT with ATR, including pat-downs. In particular, TSA issued a press release, available online, showing it will be "replacing the current, gender-based AIT system[...] [to] advance civil rights

and improve the customer experience of travelers who previously have been required to undergo additional screening due to alarms in sensitive areas" but only "[u]pon completion of successful testing" (Exhibit A). While providing little detail and no dates, the press release also explains that interim policy/procedures on how to perform pat-downs on such passengers "will be in effect until the new gender-neutral AIT screening technology is deployed" (Exhibit A). Both statements, including the future anticipated change to the ATR algorithm conditional upon successful testing, and the use of modified pat-downs conditionally in place until a modified ATR algorithm is determined to have been successfully tested, make clear that there is no longer a *final* agency action eligible for a petition for review in a court of appeals. *See City of Dania Beach, Fla. v. F.A.A.*, 485 F.3d 1181, 1187-88 (D.C. Cir. 2007) (first prong when deciding whether an agency action is final is whether "statements and conclusions are tentative, open to further consideration, or conditional on future agency action").

      Specific to the Rehabilitation Act claim, another problem is that the defendant has not proffered any evidence that the only disability accommodation available for the plaintiff would require a modification of the Checkpoint SOP. In paragraph 33 of the complaint, the plaintiff listed one possible accommodation (albeit not ideal) that most clearly appears not to require a change to the Checkpoint SOP: "trusted traveler program" screening as a disability accommodation (with the implicit assumption that the plaintiff otherwise is qualified). In addition, the same paragraph also lists avoiding having "a stranger lifting clothing at the waistline and feeling inside of clothing at the waistline" as another potential disability accommodation, which also may be possible to implement in a way that does not require a change to the Checkpoint SOP, such as by feeling through clothing rather than inside of clothing, or by the defendant giving the plaintiff guidance on clothing choice that does not require feeling

inside of clothing. Instead of proffering any declarations/affidavits specific to whether any accommodation for the plaintiff's PTSD may exist during the pat-down process that would not involve modifying the Checkpoint SOP, the plaintiff proffers *Ruskai* and the unpublished opinion of *Muir v. TSA,* No. 20-cv-1280, (C.D. Ill. Jan. 22, 2021) to challenge subject matter jurisdiction in district court for a request for a disability accommodation in a public accommodation. In *Ruskai*, a considerable portion of the opinion is devoted to discussing the plaintiff's status in TSA PreCheck and how this was helpful, but not fully sufficient, at ameliorating disability-related barriers for the plaintiff. *Id,* at 61, 64 (1st Cir. 2014). This seems to support one possible accommodation that could be considered in the instant case. Regarding the pat-down process itself, there were no findings of fact on what the Checkpoint SOP requires for the specific procedural steps in a pat-down, which were reviewed under seal and not commented on in the opinion. *Id*, at 61, 73. As such, there may be a disability accommodation not requiring a change to the Checkpoint SOP for the plaintiff in the instant case, who has a different disability from the plaintiff in *Ruskai* and never received any administrative decision letter regarding disability accommodations from TSA like the plaintiff in *Ruskai*. *Muir* is even more unavailing. In *Muir*, the *pro se* plaintiff appears to have argued that his Rehabilitation Act claim was based on "common law negligence." *Id.* at *27  ("He fails to explain how they are not direct challenges to the SOP or inescapably intertwined with review thereof. Rather, he generally states his claims arise under common law negligence and argues the merits of his negligence claims").

    **B. The action is not a direct challenge to the Checkpoint SOP.**

    The defendant argues that a district court lacks subject matter jurisdiction to hear the plaintiff's claims due to 49 U.S.C. § 46110, which provides that the courts of appeal have "exclusive jurisdiction" over claims involving review of a TSA "order" issued in whole or in part

pursuant to the agency's powers found in 49 U.S.C. § 114(1) or (s) or 49 U.S.C § 40101-47534 (Br., at. 4-5). The defendant specifically argues that the complaint "directly challenges" the Checkpoint SOP (Br., at 5).

This is incorrect. Nothing in the complaint directly seeks an order to "affirm, amend, modify, or set aside any part of" any TSA-issued order. Moreover, even if it were asking for an injunction for a procedural step required by the Checkpoint SOP, it would still not be not considered a direct challenge. *See Durso v. Napolitano*, Civil Action No. 10-02066 (HHK), at *11-12 (D.D.C. July 5, 2011) ("[Defendants' argument that the court of appeals could give plaintiffs the relief they seek elides the distinction between the remedy sought by plaintiffs — a permanent injunction barring the use of AIT scanners or enhanced pat-downs as a primary means of screening air travelers — and the relief that the court of appeals can provide: 'affirm[ing], amend[ing], modify[ing], or set[ting] aside any part of' the SOP").

### C. The action is not inescapably intertwined with review of the Checkpoint SOP.

The defendant next argues that the plaintiff's claims are precluded from district court subject matter jurisdiction due to the inescapable intertwinement doctrine (Br., at 7-8). The defendant contends that the instant action regarding sex/gender stereotyping in the ATR algorithm is exclusively within the appellate court jurisdiction due to the existence of the Checkpoint SOP, which dictates that passengers undergo screening using AIT machines followed by a pat-down if triggering an alarm, and claims that this is inescapably intertwined with review of such Checkpoint SOP requirements.

The claims in the instant action are not inescapably intertwined with a review of a TSA order within 49 U.S.C. § 46110's grant of exclusive jurisdiction to the federal appellate courts. In this case, the relief sought—declaratory and injunctive relief so that the ATR algorithm does not

rely on sex/gender stereotyping—is not precluded by the content of the TSA Checkpoint SOP. The Checkpoint SOP sets forth the requirement that passengers are screened using AIT machines and undergo pat-downs when alarmed. The plaintiff does not seek to change any of the procedural screening requirements. Paragraph 56 in the Complaint describes that an update to the ATR algorithm could be implemented without a change to the content of the Checkpoint SOP. The only requested relief for the Fourth Amendment claim does not require a change to Checkpoint SOP.

Review of unlawful sex/gender stereotyping in the screening technology used by TSA, as well as TSA's declining to provide a response on whether a disability accommodation can be offered, is such a case that properly belongs in the district court, not an appellate court. An appellate court would be ill-equipped to address a dispute over sex/gender stereotyping in the ATR algorithm, which necessarily would require district court factfinding as a pattern-and-practice case. Paragraph 52 notes that the defendant's Office for Civil Rights and Civil Liberties has received several complaints from transgender passenger on the topic of sex/gender discrimination with the AIT's ATR algorithm. Paragraph 43 notes that the defendant has a practice of assessing civil penalties on passengers with disabilities who are unable to complete the screening process due to the defendant not providing effective accommodations for their disabilities. *See Ramsingh v. Transp. Sec. Admin.*, No. 21-1170, at *6 (D.C. Cir. July 15, 2022) (individual with PTSD from sexual assault was assessed an initial civil penalty of $2,050—later reduced but not eliminated—by TSA for being unable to complete the screening process due to not being provided an effective accommodation for the plaintiff's disclosed disability). There are sufficient alleged facts in the complaint to support a broad facial challenge regarding sex/gender stereotyping and disability discrimination that are not limited to review of one individual's

circumstances. Broad facial challenges to TSA orders are not precluded from district court subject matter jurisdiction. *See Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec.*, at 14-15 (D.D.C. 2014). *See also Gilmore v. Gonzales*, at 1125, 1133 n.9.

The defendant's case law is not to the contrary. In *Ruskai v. Pistole*, 775 F.3d 61 (1 Cir. 2014), for example, the defendant did not dispute the plaintiff's decision to file a case seeking to be exempted from pat-downs in an appellate court; moreover, the appellate court never set forth any conditions as to when a district court could have jurisdiction, while also noting there were "certain exceptions" for appellate court jurisdiction without elaborating. The plaintiff in *Corbett* sought an injunction "to permanently enjoin the use of AIT and enhanced pat downs." *Corbett v. U.S.*, Case No.: 10-Civ-24106, at *2 (S.D. Fla. Apr. 29, 2011). The plaintiffs in *Durso* sought "a permanent injunction barring the use of AIT scanners or enhanced pat-downs as a primary means of screening air travelers." *Durso*, at *11. The plaintiff in *Gilmore* sought an injunction enjoining the requirement to show identification at airline check-in counters. *Gilmore*, at 1125. The plaintiff in the instant case is not seeking to enjoin any procedural step in the Checkpoint SOP, such as the requirement to undergo AIT scanning or a pat-down if triggering an alarm, and the plaintiff's complaint also raises broad facial challenges about sex/gender stereotyping and the defendant's approach to disability accommodation requests.

The plaintiff's claims are not inescapably intertwined with review of the Checkpoint SOP.

**III.** **In the Alternative, the Court Should Transfer the Applicable Claim(s) to the Second Circuit.**

Even if the Court were to determine that claim(s) in this action fell within 49 U.S.C. § 46110's grant of exclusive jurisdiction to the federal appellate courts and could not proceed in a

district court, it would be in the interest of justice for the Court to transfer the claim(s) to the Second Circuit pursuant to 28 U.S.C. § 1631.

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

It is Second Circuit precedent that such transfer normally is in the interest of justice. *See Hendrickson v. United States*, 791 F.3d 354, 363 (2d Cir. 2015) ("Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating") (internal quotation marks and citations omitted).

Other courts have also applied such a transfer pursuant to 28 U.S.C. § 1631 specifically for cases invoking 49 U.S.C. § 46110 subject matter jurisdiction. *See Long v. Pekoske*, 38 F.4th 417 (4th Cir. 2022) ("The District Court determined that Long's as-applied claims fell within 49 U.S.C. §46110's grant of exclusive jurisdiction to the federal appellate courts over challenges to final Transportation Security Administration ('TSA') orders. So it transferred those claims to us under 28 U.S.C. § 1631.").

In the event that the Court were to determine that it lacked subject matter jurisdiction over any claim in this action, it is respectfully requested that the Court transfer the applicable claim(s) to the Second Circuit Court of Appeals.

**Conclusion**

For the reasons set forth above, the defendant's motion should be denied, or, in the alternative, the applicable claim(s) transferred to the Second Circuit Court of Appeals pursuant to 28 U.S.C. § 1631.

Respectfully submitted,

/s/ Jane Doe
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
Plaintiff *pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2022, the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint was filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to John W. Larson, U.S. Attorney's Office for the District of Connecticut, counsel of record for the defendant.

/s/ Jane Doe
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
*Plaintiff pro se*
