UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, | : | Case No. 22-cv-805(OAW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. DEP'T OF HOMELAND SECURITY, | : | |
| Defendant. | : | November 21, 2022 |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Pursuant to Local Civil Rule 7(d), Defendant respectfully submits this reply

memorandum in support of its Motion to Dismiss. Plaintiff's opposition (*see* docket entry

no. 22, hereinafter "Pl. Opp."), attempts to argue around a fatal flaw she has been aware of

from the outset: challenges to TSA screening are channeled exclusively to the courts of

appeals by 49 U.S.C. § 46110. Plaintiff seeks to avoid dismissal by selectively reading

non-binding dicta and characterizing her claims as attacking only specific technicalities of

TSA screening. But her arguments do not overcome the fact that her claims are, at a

minimum, inescapably intertwined with review of TSA's SOP, which can only occur in the

courts of appeals.

**I.      Plaintiff's claims cannot be divorced from review of TSA's SOP.**

In an effort to get around the uniform case law finding that challenges to TSA

security screening necessarily implicates review of a final order—the SOP—and thus are

subject to § 46110, Plaintiff tries to frame her Fourth Amendment claim as alleging that

only the AIT software algorithm is unconstitutional, not TSA's screening procedures

themselves. (Pl. Opp., at 6.) But Plaintiff's attempt to dissect TSA's security screening and

focus on only one element in isolation is exactly the type of argument the inescapable-

intertwinement doctrine is intended to foreclose. *See Durso v. Napolitano*, 795 F. Supp. 2d 63, 71 (D.D.C. 2011) ("A basic purpose of the doctrine is to prevent plaintiff's from avoiding special review statutes through creative pleading."); *Mohamed v. Holder*, No. 11-cv-50, 2011 WL 3820711, at *6 (E.D. Va. Aug. 26, 2011) ("The applicability of Section 46110 is to be judged by reference to the substance of plaintiff's claims, not his characterization of those claims as something other than the review of a TSA order."). Despite Plaintiff's contention that the AIT software alone is the singular focus of her claims, it is obvious that the software *by itself* does not cause her harm.  Plaintiff's alleged harm—experiencing a "disproportionate percentage" of pat-downs, (*See* Compl., ¶44)—plainly does not occur by software alone; rather, the alleged harm comes to pass only when "alarms" produced by the software require additional screening set forth and established by the SOP. *See, e.g., Stavropoulos v. United States*, No. 18-cv-1946, 2021 WL 3408502, at *1-2 (N.D. Ill. Aug. 4, 2021) (finding that the SOP governs AIT and pat-down procedures). Plaintiff's exclusive focus on the software algorithms also overlooks that AIT screening relies on human input at the start of a scan to indicate which algorithm, male or female, should be utilized. The guidance that a TSA screening employee uses to provide that input is likewise set forth by the SOP. (*See* Compl., ¶8.) Although Plaintiff asserts that she takes issue only with the software "algorithm itself," (*see* Pl. Opp., at 6), her claim necessarily amounts to a challenge to the procedures by which TSA employees choose to start a scan with either the male or female algorithm and/or the procedures used to resolve alarms that ostensibly arise from transgender individuals' anatomy. Plaintiff speculates without further support that her alleged harm could be remedied by an "update" to the software; *id.* at 10; but that discounts the need for any concomitant changes to procedures

that might be required by that update. Her speculation also elides the consideration that her injury could be addressed by leaving the software exactly the same and changing TSA's procedures for starting AIT scans such that she could be scanned using the male algorithm that would not alarm on her anatomy.

In sum, evaluating Plaintiff's Fourth Amendment claim necessarily entails an evaluation of *all* of TSA's screening policies and procedures associated with how travelers experience AIT screening and alarm resolution (rather than a narrow focus the algorithm that is part of that process), to include the pat-down screening procedures that are unmistakably integral to any injury that plaintiff alleges and set forth in the SOP. *See, e.g., Thomson v. Stone*, No. 05-cv-70825, 2006 WL 770449, at *6 (E.D. Mich. Mar. 27, 2006). Thus, even if one were to accept Plaintiff's artificially narrow focus on the AIT software, her claim remains inescapably intertwined with review of the SOP. This Court should not allow her to circumvent § 46110 by cherry-picking a single technical aspect of TSA's security screening and insisting that her claim hinges on that alone.[1]

II.     **Section 46110 applies to Plaintiff's purportedly "facial" challenges.**

Plaintiff also seeks to circumvent the applicability of § 46110 by labeling both her Fourth Amendment and Rehabilitation Act claims as "[b]road facial" challenges that are "considered outside the scope" of the channeling of claims involving review of a TSA

---

[1]Plaintiff is incorrect that an "appellate court would be ill-equipped to address" her claim. (Pl. Opp., at 10.) *See, e.g., Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012) (explaining that "§ 46110 does not deny" meaningful judicial review and that appellate courts are able to ensure a sufficient administrative record to rule on the merits of a challenge to TSA screening procedures); *Durso*, 795 F. Supp. 2d at 72-73 (rejecting argument that review of claims by an appellate court under § 46110 offends due process); *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 11 (D.D.C. 2011) (finding it "clear that a court of appeals . . . could rule on plaintiff's constitutional claim").

order to the courts of appeals. (Pl. Opp., at 4.) Plaintiff's argument is unavailing, however,

because courts have consistently found putatively "facial" challenges—constitutional or

otherwise—to TSA security screening actions to be inescapably intertwined with review of

policies and procedures set forth in an agency order (such as the SOP) and thus subject to §

46110. *See, e.g., Durso*, 795 F. Supp. 2d at 71 (rejecting "plaintiffs' argument that broad

constitutional challenges are categorically exempt from intertwinement analysis"); *Corbett*,

458 F. App'x at 871 (holding that "Corbett cannot escape the jurisdictional limitations of §

46110 by claiming that he asserts a broad constitutional challenge" because such a

challenge "is inextricably intertwined with the SOP"); *Pinkerton v. TSA*, No. 11-cv-421,

2014 WL 1310203, at *8 (N.D. Okla. Mar. 31, 2014) (holding that an allegation of "some

sort of constitutional violation" was still subject to § 46110).

Plaintiff's contention appears to be predicated on a misreading of the case law cited

in her brief.  (*See* Pl. Opp., at 4) (citing *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4

(D.D.C. 2014); *Merritt v. Shuttle, Inc.* ("*Merritt II*"), 245 F. 3d 182 (2d Cir. 2001); *Mace*

*v. Skinner*, 34 F.3d 854 (9th Cir. 1994); *Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir.

2006)). None of the cited decisions identified a "facial" challenge that was beyond the

ambit of § 46110 and therefore allowed to proceed in district court. *Merritt* and *Mace*

predated the creation of TSA, and the two decisions actually involving TSA orders,

*Amerijet* and *Gilmore*, both held that district courts lacked subject-matter jurisdiction over

the purportedly "facial" claims presented. While dicta in these cases suggest that it might

be *possible* to state a facial challenge to agency action taken pursuant to an "order" within

the meaning of § 46110 that is *not* inescapably intertwined with review of the order itself,

in each case, the court found that it was not confronted with that type of claim. Indeed,

such a claim appears vanishingly rare, and Plaintiff has failed to present any judicial

decision identifying one and allowing it to proceed in district court. *See Amerijet*, 43 F.

Supp. 3d at 15 ("That a plaintiff describes its claims before a district court as [facial]

constitutional challenges to agency action does not guarantee avoidance of § 46110(a)'s

grant of exclusive jurisdiction because such claims quite often remain inescapably

intertwined with the TSA order at issue.").

First, in *Amerijet*, the court concluded that the plaintiff's purportedly "facial"

challenge to a TSA order (a Security Directive) was in fact "nothing more than an 'as-

applied challenge"; 43 F. Supp. 3d at 19; because it required the court "to evaluate how the

agency acted in regard to applying the Security Directive specifically to [plaintiff]." *Id.* at

18. The court further explained that the plaintiff's claims sought "review of the TSA's

implementation, interpretation, and enforcement of the [directive]," and those issues were

"clearly inescapably intertwined with a review of that order." *Id.* at 18-19.

Second, in *Gilmore*, the court likewise found that most of the plaintiff's claims

attacking a TSA Security Directive requiring "airline passengers to present identification . .

. or be subject to a search that is more exacting"; 435 F.3d at 1129; were "as-applied

challenges as opposed to broad facial challenges" because they arose "out of the particular

facts" of the plaintiff's alleged experience at the airport. *Id.* at 1133 n.9.[2] But the court

also separately addressed the plaintiff's Fifth Amendment Due Process claim that was

---

[2]A similar example from the Second Circuit is provided in *Merritt v. Shuttle, Inc.*
("*Merritt I*"), 187 F.3d 263, 272 (2d Cir. 1999). There the court rejected an argument that a
Fifth Amendment due process claim was outside of the scope of § 46110 because it did
"not mount a broad-based attack on the FAA's practices or policies" and instead was based
"only [on] the circumstances" of his particular case and the conduct of FAA officials with
respect to that particular case. *Id.*

arguably a true facial challenge to agency action concerning the Security Directive. The

plaintiff claimed that TSA's "failure to provide adequate notice" to the public of the

directive and what it required violated the right to due process and rendered the directive

unconstitutionally vague. *Id.* at 1135. Despite the plaintiff there framing his claim as a

facial constitutional challenge to agency action—keeping the Security Directive secret

from the public—the court found that the claim was nonetheless "'inescapably intertwined'

with a review of the [directive] because it squarely attack[ed]" TSA's policies and

procedures "with respect to airport security." *Id.* at 1133 n.9.

Third, *Mace* is a 28-year-old decision from another circuit that has never been

adopted as the law in this Circuit, and it is distinguishable because it only involved *Bivens*

claims. In *Mace*, the Ninth Circuit held that § 46110 did not deprive a district court of

jurisdiction to hear *Bivens* claims asserting "broad challenge[s] to allegedly

unconstitutional FAA practices" that were "not based on the merits of [the plaintiff's]

individual situation." 34 F.3d at 859. That holding was based in part on the fact that the

plaintiff's claims were "seeking to recover damages, a remedy not" available on a petition

for review filed under § 46110. *Id.* at 858.[3] Unlike *Mace*, Plaintiff here has not asserted

*Bivens* claims against individual defendants to seek money damages. Instead, Plaintiff only

seeks changes to TSA security screening, and that type of relief can be obtained from a

court of appeals under § 46110. Moreover, the Second Circuit has made clear that *Mace* is

---

[3]The *Durso* court described the rule in the Ninth Circuit as follows: "broad constitutional challenges are not inescapably intertwined *if they seek damages*." 795 F. Supp. 2d at 71 (emphasis original) (citing *Americopters, LLC v. FAA*, 441 F.3d 726, 741 (9th Cir. 2006) ("In principle, a district court may decide a claim for damages because § 46110 does not grant the court of appeals jurisdiction over this form of relief.")).

not "the settled law of this Circuit," and it expressly declined to "decide whether a broad-based, facial constitutional attack on an FAA policy or procedure—in contrast to a complaint about the agency's particular actions in a specific case—might constitute appropriate subject matter for a stand-alone federal suit" in district court. *Merritt I*, 187 F.3d at 271-72; *see also Durso*, 795 F. Supp. 2d at 71 n.7 (noting that the Second Circuit's decision in *Merritt I* "does not confirm that a constitutional-challenge exception to the intertwinement doctrine exists").

Finally, *Merritt II* is inapposite as it did not address a "facial" challenge to an agency action under the Constitution or a statute. Instead, the court considered a negligence claim asserted against the United States under the FTCA and held that the claim was not barred in district court by § 46110 because it could be adjudicated without involving review of an FAA order suspending the plaintiff's pilot certificate. *See* 245 F.3d at 189 (explaining that the negligence claim did not attack "the matters decided by the administrative order").[4]

Turning to this case, Plaintiff contends her Complaint "raises broad facial challenges about sex/gender stereotyping and the defendant's approach to disability accommodation requests." (Pl. Opp., at 11.) But as in prior cases discussed above, Plaintiff's theories are necessarily as applied, as they rely on the alleged facts of her own particular experience. (*See* Compl., ¶¶14-30, 53-55, 58-62, 64.) First, Plaintiff's Rehabilitation Act claim is clearly dependent on allegations specific to her, such as the nature of her disability, her efforts to seek an accommodation, and TSA's communications

---

[4]Like the *Bivens* claims in *Mace*, the negligence claim in *Merritt II* also sought money damages that are not available as a remedy on a petition for review under § 46110.

with her personally. Indeed, Plaintiff makes this point express by pleading that "DHS violates Section 504 of the Rehabilitation Act—*specifically, against Plaintiff*—by refusing to provide any accommodation/modification" of TSA's pat-down procedures. (Compl., ¶45 (emphasis added).)[5] With regard to Plaintiff's Fourth Amendment claim, she again appears to rely on individualized facts and circumstances, as it would be impossible for her to state a facial challenge on behalf of all "transgender women" (*id.* at ¶44), as that class of people has no standard, fixed definition, and even if it did, any such definition would undoubtedly encompass individuals with a wide range of anatomical and gender presentation characteristics. *See, e.g.*, "Transgender Facts," Mayo Clinic Website, available at: https://www.mayoclinic.org/healthy-lifestyle/adult-health/in-depth/transgender-facts/art-20266812 (noting that "transgender is an umbrella term used to capture the spectrum of gender identity and gender-expression diversity"). Thus, the true gravamen of Plaintiff's claim appears to be that TSA's security screening of *her*, or of "transgender women" with anatomy and gender presentation characteristics *like hers*, is unconstitutional.

Plaintiff's Complaint recognizes that how TSA screens a passenger depends on both (1) how an agency employee perceives the passenger's gender presentation (which determines whether the employee presses a blue or pink button on the AIT scanner to indicate whether male or female sexual anatomy is expected), and (2) whether the AIT software recognizes the passenger's anatomy as within or outside the expected range of

---

[5]Plaintiff's Complaint also requests relief under the Rehabilitation Act particularized to her: "Order Defendant to provide Plaintiff with a reasonable accommodation[.]" (Compl., ¶71.) The Complaint does not seek any generalized injunctive relief under the Rehabilitation Act.

variation for a body of the gender selected at the start of the scan. (*See* Compl., ¶¶8-9, 49.)

Accordingly, what TSA prescribes for screening a transgender individual, and whether

such screening is reasonable under the Fourth Amendment, are necessarily fact-specific

inquiries. Plaintiff's Fourth Amendment claim is thus more akin to the as-applied

challenges in *Gilmore* and *Amerijet* than the type of facial challenge that arguably is

outside of the scope of § 46110.  Regardless, even if Plaintiff's Fourth Amendment claim

can be construed as a broad-based facial challenge, adjudication of the claim would be

inescapably intertwined with review of the agency's SOP as explained above in part I.

### III.      Section 46110 is not limited to adjudicatory orders.

Plaintiff appears to assert that § 46110 and the concomitant inescapable-

intertwinement doctrine apply only to orders issued at the culmination of an adjudicatory

proceeding such as an administrative hearing. (Pl. Opp., at 3-4.) That is incorrect. In fact,

"the term 'order' in [section 46110] should be read expansively"; *City of Dania Beach v.

FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007); and the statute's claims-channeling provision

applies broadly to any agency order that "mark[s] the consummation of the agency's

decisionmaking process" and determines "rights or obligations or give[s] rise to legal

consequences." *Id.* (quotation omitted). That is so "regardless of whether there has been an

administrative process" or adjudicatory proceeding. *Durso*, 795 F. Supp. 2d at 71. In

*Durso*, the court rejected the very same argument Plaintiff appears to present here, namely,

that no "administrative proceeding considered the matters in either [of her] claim[s]." (Pl.

Opp., at 4.) The *Durso* plaintiffs similarly argued that TSA's screening procedures were

established by the "unilateral agency action" of issuing the SOP without any "true

administrative process." 795 F. Supp. 2d at 71. The court explained that the lack of

previous administrative proceedings was irrelevant to the § 46110 analysis, as "avoiding

relitigation of agency proceedings is not the only purpose" of the statute, and another

"prime rationale therefor is that coherence and economy are best served if all suits

pertaining to designated agency decisions are segregated in particular courts." *Id.*

(quotation omitted); *see also Roberts*, 798 F. Supp. 2d at 10.  In this case, Plaintiff has not

presented any authority or persuasive reasoning undermining the uniform case law finding

that TSA's SOP establishes how airport security screening unfolds, and the SOP is an

order under § 46110.  *See Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1042-43 (D.

Minn. 2011) (rejecting arguments that TSA's SOP is not an "order").

**IV.**   **Proposed changes to TSA screening do not render the current SOP non-final.**

Plaintiff argues that a press release announcing planned changes to TSA screening

means that the agency "is now operating under interim policies and procedures" that

cannot be considered a *final* order subject to review under § 46110. (Pl. Opp., at 6-7.)

Courts have roundly rejected this sort of argument, and Plaintiff has presented no authority

supporting her position. *See, e.g., Durso*, 795 F. Supp. 2d at 67 ("Simply put, plaintiffs

provide no authority for the proposition that an otherwise-authoritative order is not final

for the purposes of § 46110 simply because it is subject to revision."); *Sai v. Smith*, No. 16-

cv-1024, 2018 WL 534305, at *7 (N.D. Cal. Jan. 24, 2018).

**V.**   **Defendant takes no position on transfer to the Second Circuit.**

The court has discretion to dismiss this action for lack of subject-matter jurisdiction

and transfer it to the Second Circuit under 28 U.S.C. § 1631.  Defendant takes no position

on Plaintiff's request for such a transfer but expressly reserves its right to assert any and all

defenses to a petition for review if the matter is transferred to the court of appeals.

Respectfully submitted,

Vanessa Roberts Avery
United States Attorney


  /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T:  (860) 947-1101
F:  (860) 760-7979
john.larson@usdoj.gov