## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANE DOE,
              Plaintiff                        CASE NO: 22-cv-00805 (OAW)

              v.                       **FIRST AMENDED COMPLAINT**

U.S. DEPARTMENT OF HOMELAND SECURITY,    **JURY TRIAL DEMANDED**
              Defendant

Plaintiff Jane Doe,[1] *pro se*, for her Complaint alleges as follows:

### PARTIES

1. Plaintiff Jane Doe is a citizen of the State of Connecticut, who presently resides within Hartford County.

2. Defendant U.S. Department of Homeland Security ("DHS") is a U.S. government agency, components of which include, *inter alia*, the Transportation Security Administration ("TSA"). Defendant's address is 2707 Martin Luther King Jr. Ave, SE, Washington, DC 20528-0485.

3. Defendant has procured and continues to operate Advanced Imaging Technology ("AIT") millimeter wave machines with Automated Target Recognition ("ATR") algorithms, pursuant to contract(s) with Leidos, formerly L-3 Communications.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331. This case involves questions of federal law, including the Fourth and Fifth Amendments to the U.S. Constitution and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*, as well as a request for declaratory relief pursuant to 28 U.S.C. § 2201.

---

1   Plaintiff is using the pseudonym Jane Doe in this Complaint due to its sensitive nature.

5. This is not an action pursuant to 49 U.S.C. § 46110 requesting this Court to affirm, amend, modify, or set aside any part of any TSA-issued aviation security order, nor are the claims within this action inescapably intertwined with a review thereof.

6. Venue is proper in, and the Defendant is subject to the personal jurisdiction of, this Court, pursuant to 28 U.S.C. § 1391(e)(1)(C), because the Defendant is a U.S. government agency, the plaintiff resides in this District, and no real property is involved in this action.

## FACTS GIVING RISE TO RELIEF

7. TSA, as a component of DHS, screens all passengers proceeding through TSA airport security screening checkpoints who seek to enter the sterile area.

8. TSA employees can select certain air travel passengers for additional, targeted searches while proceeding through screening at the TSA security checkpoint with a variety of different methods.[2]

9. One such screening technique is AIT with ATR. Following the widespread adoption of AIT with ATR across the United States in 2011, several transgender passengers repeatedly found themselves in a nightmarish scenario. For example, the AIT's ATR algorithms decided that many transgender women were security threats due to either having external genitalia that cisgender women do not have (if the operator pressed the pink button) or having breasts of more typically female size while wearing bras (if the operator pressed the blue button). *See* Lucas Waldron and Brenda Medina, *When*

---

2    TSA uses a variety of potential universal screening techniques that may trigger additional, targeted searches, most of which rely on some amount of human discretion. Examples of such universal screening techniques that may trigger an additional targeted search include canine enhanced screening, behavior detection activities, identification/travel document verification, AIT with ATR screening, and walk-through metal detector screening. See *Aviation Security: TSA Should Assess Potential for Discrimination and Better Inform Passengers of the Complaint Process* (GAO-23-105201), U.S. GAO (Nov. 7, 2022), https://www.gao.gov/assets/gao-23-105201.pdf, page 7.

*Transgender Travelers Walk Into Scanners, Invasive Searches Sometimes Wait on the Other Side*, PROPUBLICA (Aug. 26, 2019), https://www.propublica.org/article/tsa-transgender-travelers-scanners-invasive-searches-often-wait-on-the-other-side. *See also* Emma Eisenberg, *The TSA's Technology Is Discriminating Against Trans People, Pacific Standard* (Aug. 5, 2019), https://psmag.com/social-justice/tsa-technology-is-discriminating-against-trans-people.

10. To make matters all the more disturbing, the end result regardless of what button was pressed for these transgender passengers in paragraph 9 was a targeted pat-down of the most sensitive, intimate body locations possible: the chest (including breasts) or the groin (including the buttocks, inner thighs, and borders of the external genitalia). *Id.*

11. In October 2015, 32 Members of the House of Representatives wrote a letter to the TSA Administrator expressing concerns "from numerous members of the transgender community describing harassing and humiliating experiences while going through airport security" that TSA had not addressed.[3] When asked about complaints of discriminatory treatment by transgender travelers, TSA press secretary Ross Feinstein said in 2014 that there were no changes TSA planned to make to address this topic.[4]

12. In the most recent available report of the U.S. Transgender Survey (2015), 43% of respondents who went through airport security in the year prior to the survey reported a problem specific to their transgender status (GAO report, page 31).

13. The TSA Office of Civil Rights and Liberties, Ombudsman and Traveler Engagement (CRL/OTE) Multicultural Branch received more than one hundred administrative

---

3   https://pocan.house.gov/sites/pocan.house.gov/files/wysiwyg_uploaded/TSA%20Letter.pdf
4   http://america.aljazeera.com/articles/2014/5/26/groin-anomalies-andpatdownstravelingwhiletrans.html

complaints of discrimination due to transgender status the following calendar year, and many more concerns inevitably go unreported to TSA (GAO report, page 31).

14. On November 7, 2022, the U.S. Government Accountability Office (GAO) published the final report, *Aviation Security: TSA Should Assess Potential for Discrimination and Better Inform Passengers of the Complaint Process* (GAO-23-105201), U.S. GAO (Nov. 7, 2022), https://www.gao.gov/assets/gao-23-105201.pdf ("GAO study"), which analyzed the data available pertaining to discrimination during the TSA security checkpoint screening process.

15. Supervisory transportation security officers at all four airports visited by the GAO study team, as well as all 12 discussion groups with transportation security officers (TSOs), disclosed that transgender individuals are a category of passengers frequently targeted for such additional administrative searches at TSA airport screening checkpoints (page 18).

16. TSA will be entering a revised ATR algorithm into service in the first fiscal quarter of 2023, which will purportedly be gender neutral.

17. However, the GAO study notes that transgender passengers are frequently referred for additional searches, and that such a change to the ATR algorithm may potentially not have an effect on the disproportionate referrals of transgender passengers for additional searches, which TSA had no plan to monitor. Specifically, the GAO study states regarding the ATR algorithm change that "it is too early to determine the potential effect it may have on referrals for additional screening for transgender, gender nonconforming, and other passengers" (page 22).

4

18. Plaintiff has personally been affected by such discriminatory referrals for additional, invasive administrative searches due to Plaintiff's transgender status.[5]

19. Plaintiff's duration of time on estrogen made her facial features more feminine in appearance as of May 2022, especially when combined with wearing a mask and a head covering.

20. On May 19, 2022, a TSO unsolicitedly told Plaintiff that she was guaranteed to be subjected to pat-downs in the near future because she is transgender, and that she should think about how to approach it.

21. On May 22, 2022, Plaintiff, as a transgender woman who had just proceeded through the AIT with ATR scanning process in the TSA security checkpoint screening process at Chicago Midway International Airport, with a female gender expression, was told that she told she had an "[anomaly] in the groin" that required a targeted pat-down of that region.

22. During this incident on May 22, 2022, Defendant subjected Plaintiff to a non-random, targeted pat-down procedure involving, among other things, a TSA employee lifting the top edges of her skirt to feel her clothing at the waistline, feeling her buttocks, feeling her inner thighs, and making contact with the outer borders of Plaintiff's external genitalia with the back of the employee's gloved hands.

23. No prohibited items were found during the May 22, 2022, administrative search.

24. The only reason the targeted search occurred was due to the Plaintiff being a transgender woman.

_____

5   Plaintiff is "transgender," which is defined as "of, relating to, or being a person whose gender identity differs from the sex the person had or was identified as having at birth." See https://www.merriam-webster.com/dictionary/transgender.

25. Plaintiff had been diagnosed with post-traumatic stress disorder ("PTSD") related to past sexual assaults before the events of May 22, 2022.

26. The events described in paragraph 22 were, for the Plaintiff, so reminiscent of one specific past sexual assault that the Plaintiff experienced in March 2020—which involved an individual lifting her dress and making contact with her inner thighs while attempting to grope her external genitalia—that Plaintiff experienced psychiatric distress afterwards.

27. Plaintiff experienced dissociation during and after the events described in paragraph 22.

28. Plaintiff experienced significant psychiatric distress directly related to the May 22, 2022, incident in following the weeks, including episodes of dissociation, intrusive imagery, nightmares, and uncontrolled crying.

29. Due to the extent of Plaintiff's psychiatric distress, over the next two weeks, plaintiff was forced to use paid sick leave for one full-day, use two full days of scheduled paid time-off, and obtain permission to be excused early on a fourth day to obtain mental health care related to the incident.

30. While Plaintiff is afraid to travel without appropriate relief in light of what occurred on May 22, 2022, she nevertheless is required to travel by air in May 2023 for a conference and in June 2023 and March 2024 for medical care.

31. Plaintiff is realistically threatened by a repetition of her experience when traveling in the future.

32. On June 13, 2022, Plaintiff asked the TSA Contact Center how to request a disability accommodation[6] in advance of screening at an airport.

---

6   Plaintiff uses the more common current term of disability "accommodation" synonymously with the original term of "modification" contained in the text of the Rehabilitation Act of 1973.

33. The same day, the TSA Contact Center responded with an answer asserting "All Passengers Must Be Screened" without any information on how to request a disability accommodation.

34. The same day, Plaintiff replied asking to confirm that TSA does not offer accommodations to participate in the screening process for passengers with disabilities.

35. The same day, the TSA Contact Center replied that there is an informational "helpline" that "provides information on screening procedures," and there is a Passenger Support Specialist position to provide accompaniment for helping passengers with disabilities proceed through the checkpoint.

36. At no point in Plaintiff's correspondence did the TSA Contact Center provide any information on how to request a disability accommodation pursuant to the Rehabilitation Act of 1973.

37. The TSA Contact Center is a customer service component of TSA that answers public questions.

38. The TSA Checkpoint SOP—which describes procedural steps for airport security checkpoint screening—explicitly allows for providing disability accommodations during screening (GAO study, page 13), although the training course that TSA offers on "TSA's obligation to comply with federal civil rights laws, identify a reasonable accommodation request, and recognize how to prevent unfair treatment of the traveling public due to a disability" is "optional" (GAO study, page 16).

39. Although the TSA Checkpoint SOP permits TSOs to provide disability accommodations during screening, TSA has yet to create a process for members of the public to request a

disability accommodation for participation in TSA activities. As stated in the most recent *TSA's Section 504 Component Plan for Nondiscrimination of Individuals with Disabilities*, "Presently, the TSA does not have a process in place for individuals to request modifications of policies, practices, and procedures, except to file a discrimination complaint regarding a specific screening event at a checkpoint" (page 14).[7] TSA's plan involves creating a disability request process that is generalized for all of its public programs/activities, initiated in the TSA Contact Center, and not limited to processing accommodations for its aviation security activities (page 14).

40. Reasonable accommodations of the targeted pat-down exist for Plaintiff. As some examples, reasonable accommodations for her with PTSD may include modifying the pat-down to avoid the step involving a stranger lifting clothing at the waistline and feeling inside of clothing at the waistline; using TSA's existing self-pat-down protocol (e.g., using an explosive trace detection device on Plaintiff's hands after a self-pat down, which TSA allows as a religious accommodation, see GAO study, page 14); using TSA's existing canine enhanced screening protocol (see GAO study, page 8, footnote 14); using TSA's existing trusted traveler programs; or any combination of the above. In addition, Plaintiff is also open to dialogue with TSA to identify an accommodation that would be in accordance with existing TSA policy regardless of whether it would be the most preferred accommodation for Plaintiff.

41. Plaintiff remains in fear of traveling by air without such a reasonable accommodation from Defendant due to the risk that she may require another such pat-down that serves a trauma reenactment, especially when considering severity of the psychiatric symptoms

---

7    https://www.dhs.gov/sites/default/files/publications/tsa-disability-access-plan.pdf

that she experienced after the events of May 22, 2022, to which Defendant subjected her, yet has been unable to obtain any response from Defendant on how to request a disability accommodation.

## NATURE OF THE CASE

42. This action asserts that Defendant has shown deliberate indifference to the pattern and practice of disproportionately selecting transgender passengers, a *quasi*-suspect class, of which Plaintiff is a member, for additional administrative searches, which is unlawful under the Fourth Amendment and the Fifth Amendment to the U.S. Constitution.

43. This action additionally asserts that Defendant violates the Rehabilitation Act of 1973 by refusing to provide information on how to request a disability accommodation when asked, in writing, how to do so.

## COUNT I:
## PATTERN AND PRACTICE OF UNLAWFUL ADMINISTRATIVE SEARCHES IN VIOLATION OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

44. Plaintiff incorporates by reference as if fully set forth herein the contents of paragraphs 1 through 43 above.

45. Plaintiff is transgender, and a result, is a member of a *quasi*-suspect class.

46. Defendant's searches at TSA security screening checkpoints are administrative or special needs searches, which can be random or universal, not necessarily involving individualized suspicion.

47. Defendant has a pattern and practice of disproportionately selecting airport passengers who are transgender for additional searches.

48. Defendant has acted deliberately indifferent to this pattern and practice of unlawful administrative searches on transgender individuals by waiting several years to even consider addressing it, and even after more than a decade of persistent civil rights complaints from transgender passengers about discriminatory referrals for additional searches, still not having reduced discriminatory referrals for additional searches.

49. The character of the intrusion imposed by such additional searches is considerable for transgender people, as it involves federal government employees feeling people's breasts, buttocks, inner thighs, or the borders of their external genitalia.

50. On May 22, 2022, the Plaintiff personally experienced such an unlawful, arbitrary search of a sensitive body location, while proceeding through TSA security screening at Chicago Midway International Airport, when was told she had an "[anomaly] in the groin" that required a targeted pat-down of that region, despite having no basis for being selected other than being transgender.

51. Plaintiff is realistically threatened by a repetition of her experience when traveling in the future, including when traveling by air to a conference in May 2023 and when traveling by air for medical care in June 2023 and March 2024.

**COUNT II:**
**VIOLATION OF THE EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE**

52. Plaintiff incorporates by reference as if fully set forth herein the contents of paragraphs 1 through 51 above.

53. Defendant has subjected transgender individuals, a *quasi*-suspect class of which Plaintiff is a member, to unequal protection of the law due to their transgender status.

## COUNT III:
## UNLAWFUL DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF
## SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. 794

54. Plaintiff incorporates by reference as if fully set forth herein the contents of paragraphs 1 through 43, above.

55. Plaintiff is a person with a disability within the meaning of 29 U.S.C. 794.

56. The TSA security screening checkpoints at airports throughout the United States are a program or activity of Defendant, a federal government agency.

57. Plaintiff is otherwise qualified to participate in the program or activity of TSA security screening checkpoints.

58. Defendant discriminates against Plaintiff's participation in the program or activity by failing to provide information on how to request a disability accommodation before traveling to allow Plaintiff equal access to participate in the program or activity.

59. On May 22, 2022, Defendant subjected Plaintiff to a set of actions that resembled patient's prior sexual assault for which she had previously been diagnosed with PTSD.

60. Defendant's Checkpoint SOP explicitly allows for the provision of disability accommodations.

61. Defendant has not made any attempt to determine whether a reasonable accommodation for Plaintiff's disability exists.

## DECLARATORY RELIEF ALLEGATIONS

62. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated her rights under

the Fourth Amendment to the U.S. Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794. Plaintiff is informed and believes and thereon alleges that Defendant denies these allegations. Declaratory relief is necessary and appropriate.

63. Plaintiff seeks a judicial declaration of the respective rights and duties of the parties

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff JANE DOE, requests the following relief:

64. Declare that Defendant has a pattern and practice of disproportionately selecting transgender passengers for additional administrative searches, which is unlawful under the Fourth and Fifth Amendments to the U.S. Constitution.

65. Declare that Defendant's failure to provide, upon written request, information on how to request a reasonable accommodation to avoid being excluded from participation in, or otherwise subjected to discrimination, on the basis of disability during TSA airport security checkpoint screening, is unlawful under the Rehabilitation Act of 1973.

66. Such other and further relief as this court may deem just and proper.

## **JURY DEMAND**

67. Plaintiff respectfully demands a trial by jury of all matters so triable.


Respectfully submitted,

/s/ Jane Doe
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
Plaintiff *pro se*

12

## <u>DECLARATION UNDER PENALTY OF PERJURY</u>

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed in Hartford County, Connecticut, on November 26, 2022.

Jane Doe, *pro se*