UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE,                                                              Case No. 3:22-cv-00805-OAW

        Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,

        Defendant.

<u>Memorandum of Law in Opposition to Defendant's Motion to Stay Discovery</u>

The Plaintiff, Jane Doe, submits this Memorandum of Law in Opposition to Defendant's Motion to Stay Discovery. The Plaintiff acknowledges the Defendant's concerns about the scope of the discovery, given the broad, facial challenge to a pattern-and-practice that the amended complaint poses, while a dispositive motion is pending. As such, the Plaintiff is proposing only limited jurisdiction discovery for the Court to consider, designed to avoid prejudice to the Plaintiff while not burdening the Defendant.

In a motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1), "the party opposing the motion must be allowed discovery of the facts demonstrating jurisdiction at least where the facts are peculiarly within the knowledge of the opposing party." *Greenery Rehab. Group, Inc. v. Sabol, 841 F.Supp. 58, 62 (N.D.N.Y.1993)* (citing *Kamen v. Amer. Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)). *See also Lithgow v. Edelmann*, 247 F.R.D. 61, 63 (D. Conn. 2007) ("Imposing a stay of discovery would likely severely prejudice the plaintiff by impeding her ability both to respond to the motion to dismiss and to prove her claim").

As the Defendant notes, the Defendant, in its sole determination, decided that this case was an appeal of an administrative order—specifically, the Checkpoint Screening Standard Operating Procedures ("Checkpoint SOP")—and, thus, the Defendant interpreted the action as exempt from the Rule 26(f) conference requirement, thereby making initial disclosures and discovery impossible. In this case, this means that the Plaintiff has been limited to publicly released governmental documents found via Internet searches (e.g., DHS/TSA and GAO documents) and finding personal screening videos and stories about TSA practices on social media platforms (such as Twitter, Instagram, and TikTok), which is nowhere near the strength of an argument that the Plaintiff could make with even limited jurisdictional discovery.

There is not any Congressional intent to avoid district court discovery as a blanket rule in all cases involving TSA.[1] To the contrary, Congress passed an act specifically requiring district court plaintiffs to be given access to sensitive security information ("SSI") when necessary for district court litigation against TSA: *Department of Homeland Security Appropriations Act of 2007*, Pub. L. No. 109-295, § 525(d), 120 Stat. 1355 (2006)).

The original complaint requested declaratory and injunctive relief preventing TSA and its contractor from relying on sex/gender stereotyping in the ATR algorithm software, which select which passengers require additional scrutiny at the security screening checkpoint. In addition, it requested injunctive relief for TSA to respond to Plaintiff's request for a disability accommodation.

The proposed amended complaint requests two types of relief: declaratory relief that Defendant has "a pattern and practice of disproportionately selecting transgender passengers for additional administrative searches, which is unlawful under the Fourth and Fifth Amendments to

---

1    This statement is not intended to address Congressional intent surrounding challenges to lawfully issued TSA aviation security orders, which are properly within the exclusive jurisdiction of the appellate courts.

the U.S. Constitution" (Paragraph 64) and declaratory relief that Defendant's failure to provide,

upon written request, information on how to request a reasonable accommodation for airport

security screening is unlawful under the Rehabilitation Act of 1973 (paragraph 65).

Neither the original complaint, nor the proposed amended complaint, requests any

specific modification(s) to the TSA Checkpoint SOP. The complaint states it is not intending to

change any steps pertaining to how people are undergo AIT scanning at the checkpoint or

undergo pat-downs when flagged by the ATR algorithm. One of the potential proposed disability

accommodations (PreCheck membership) listed in the original complaint is not something

granted at a checkpoint and therefore cannot be part of the Checkpoint SOP, while the proposed

amended complaint even more clearly removes all references in the requested relief regarding

granting any specific disability accommodation.

It is not within the discretion of TSA whether or not to use ATR in its Checkpoint SOP. A

Congressional statute, *49 U.S.C. § 44901(l)(2)(A)*, explicitly requires TSA to use ATR whenever

AIT machines are used.

It is within the discretion of TSA to require its contractor to avoid reliance on sex/gender

stereotyping in the ATR algorithm update process. This is the simplest, most straightforward

solution, which TSA itself has even admitted to the GAO study team, and chose to do.

The reliance of sex/gender stereotyping in the ATR algorithm software development was

the most foreseeable, proximate cause of why transgender individuals have been so

disproportionately referred for additional unnecessary searches. TSA has likewise admitted this

to the GAO study team. There is nothing suggesting that the wording of the Checkpoint SOP

caused this problem.

Neither the Plaintiff, nor the Defendant, has suggested any specific modification to the Checkpoint SOP would solve the problem of disproportionate referrals for additional searches of transgender passengers. The Checkpoint SOP's requirements that passengers proceed through an AIT scanner with ATR capability and, if an alarm occurs, receive additional screening with a focus on the area highlighted on the monitor, is such a common-sense, non-discriminatory policy that, by itself, cannot be a foreseeable, proximate cause of why transgender passengers are being disproportionately selected for additional searches. In addition, given that the AIT with ATR screen requires a blue or pink button to serve as the scan start button, as described in the complaint and the GAO study, it is not feasible for TSA to remove this requirement from the Checkpoint SOP, since doing so would make it impossible to start the scanning sequence. Finally, to the extent that the Defendant might attempt to argue that TSA personnel should attempt to determine whether or not specific passengers are transgender and treat these passengers differently during the screening process, the Plaintiff notes that the Second Circuit has already established that transgender people have a Constitutional right to the privacy of transgender status. As such, there is no way to fix this problem through the SOP.

The Defendant has not provided any declarations or exhibits in support of its argument that the Checkpoint SOP precludes TSA's customer service staff from replying to grant or deny a written request for a disability accommodation, or providing information in writing on the steps on how to make a request for a disability accommodation.

It is established from *Sai v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99 (D.D.C. 2015) that the failure to respond to a disability discrimination complaint about an individual's TSA airport security checkpoint screening process has appropriate subject-matter jurisdiction in district court, as it could be read as a request for relief for agency action unlawfully withheld or

4

unreasonably delayed. The DHS implementing regulation for Section 504 similarly also requires

DHS components to offer information about how to access disability accommodations, which is

at issue in this case. *See 6 CFR § 15.60*.

Additional discovery would help the Plaintiff establish by a preponderance of the

evidence that subject-matter jurisdiction is appropriate in district court. The Plaintiff proposes

that limited jurisdictional discovery proceeds, limited to only the following interrogatories:

1. Please state whether or not the content of the Checkpoint SOP provides any order(s) to

DHS, TSA, or its contractors on how to design the algorithm updates for ATR

2. Please state whether or not the Checkpoint SOP contains any direct orders for the TSA

Contact Center describing how its staff members will respond to public questions about disability

accommodations

3. Please state whether or not a written request process for a disability accommodation, as

described in *Ruskai v. Pistole,* 775 F.3d 61, 65 (1st Cir. 2014), still exists for TSA airport security

screening

a. If it exists, please describe what TSA considers to be a written request for a

disability accommodation

b. If it does not, please describe what types of communication TSA considers to be

a request for a disability accommodation

Respectfully submitted,

/s/ Jane Doe
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
Plaintiff *pro se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2022, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to John W. Larson, U.S. Attorney's Office for the District of Connecticut, counsel of record for the defendant.

<u>/s/ Jane Doe</u>
Jane Doe
PO Box 4131
Windsor Locks, CT 06096
jane.doe.survivor.ct@gmail.com
(860) 386-5140
*Plaintiff pro se*