UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, | : | Case No. 22-cv-805(VDO) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. DEP'T OF HOMELAND SECURITY, | : | |
|     Defendant. | : | April 15, 2024 |

<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>

The plaintiff's opposition (ECF 35) attempts to argue around a fatal flaw she has been aware of from the outset: challenges to the procedures TSA uses for screening are channeled exclusively to the courts of appeals by 49 U.S.C. § 46110. The plaintiff seeks to avoid dismissal by selectively reading non-binding dicta and creatively characterizing her Rehabilitation Act claim as attacking only TSA's processes (or alleged lack thereof) by which passengers can seek accommodations from screening procedures rather than the screening procedures themselves. But her arguments do not overcome the fact that her claim is, at a minimum, inescapably intertwined with review of TSA's SOP, which can only occur in the courts of appeals.

**I.      The plaintiff's assertion of mootness reinforces the applicability of § 46110.**

The plaintiff's opposition asserts that TSA's SOP has changed since this action was filed such that her Fourth and Fifth Amendment claims are now moot. The plaintiff states that "the current version of the TSA checkpoint SOP no longer requires employees to rely on gender/sex stereotyping for the advanced imaging technology (AIT)" screening conducted at checkpoints. (ECF 35 at 4-5.) She therefore asserts "there is no longer any actual controversy for both Constitutional claims," and she "acknowledges that the Court now lacks Article III jurisdiction over both Constitutional claims." (*Id.* at 5.)

1

The plaintiff is correct that the SOP has changed since this action was filed, and that TSA is working to implement AIT screening procedures that do not require employees to select a gender to initiate an AIT scan. However, at this juncture in the litigation, the defendant takes no position regarding whether the plaintiff's claims are moot.[1] As of the date of this filing, full implementation of "gender-neutral" AIT screening procedures has been temporarily delayed at a very small number of airports due to technical issues, and it therefore remains possible, though unlikely, that at a particular time at a particular checkpoint (out of the many hundreds of checkpoints operated by TSA nationwide), the plaintiff could still experience AIT screening that requires gender input.

Regardless of whether the plaintiff's claims are actually moot, her assertion of mootness reinforces the point that 49 U.S.C. § 46110 applies here. By suggesting that a change to the SOP has mooted her claims, the plaintiff implicitly concedes that her claims are necessarily challenges to the SOP, or at a minimum inescapably intertwined with review of the SOP. Because the Court lacks jurisdiction to hear the plaintiff's claims under § 46110, it should dismiss this action and need not consider the question of mootness.

## II. The Rehabilitation Act claim cannot be divorced from review of TSA's SOP.

In an effort to get around the uniform case law finding that challenges to TSA security screening necessarily implicate review of a final order—the SOP—and thus are subject to § 46110, the plaintiff tries to frame her Rehabilitation Act claim as attacking only TSA's processes (or alleged lack thereof) for requesting a disability accommodation from screening

---

[1] The defendant recognizes that as an initial matter, it is the plaintiff's prerogative to determine that she no longer has a controversy with the defendant with respect to certain claims pled in the Amended Complaint. The defendant offers additional context here to ensure it is fulfilling its duty of candor to the court.

procedures rather than challenging the screening procedures themselves. (ECF 35 at 6-7.) But the plaintiff's attempt to dissect TSA's security screening operations and focus on only one element in isolation is exactly the type of argument the inescapable-intertwinement doctrine is intended to foreclose.[2] Despite the plaintiff's contention that the process for requesting an accommodation alone is the singular focus of her claim, only a change to the screening procedures she actually experiences at the checkpoint would address her alleged harm: being subject to a pat-down procedure that causes her psychiatric distress. (ECF 32 at ¶¶26, 59.) That harm plainly flows directly from the application of TSA's screening SOP to her. *See, e.g., Stavropoulos v. United States*, No. 18-cv-1946, 2021 WL 3408502, at *1-2 (N.D. Ill. Aug. 4, 2021) (finding that the SOP governs AIT and pat-down procedures). Although the plaintiff attempted to artfully frame her claim as attacking the absence of sufficient information and process regarding disability accommodations, it is clear that the relief she actually seeks is an assurance that she will not have to undergo a pat-down procedure prescribed in the SOP. (*See* ECF 32 at ¶41 (alleging that "Plaintiff remains in fear of traveling by air . . . due to the risk that she may require another such pat-down.")). Such an assurance would not result from a court order directing general improvement of TSA's approach to disability accommodation in the abstract; instead, obtaining the relief the plaintiff actually seeks necessarily entails review of the SOP to determine whether and under what circumstances avoidance of the pat-down is allowable, and to the extent the SOP does not provide for the plaintiff to avoid a pat-down in certain situations, obtaining relief would

---

[2] *See Durso v. Napolitano*, 795 F. Supp. 2d 63, 71 (D.D.C. 2011) ("A basic purpose of the doctrine is to prevent plaintiffs from avoiding special review statutes through creative pleading."); *Mohamed v. Holder*, No. 11-cv-50, 2011 WL 3820711, at *6 (E.D. Va. Aug. 26, 2011) ("The applicability of Section 46110 is to be judged by reference to the substance of plaintiff's claims, not his characterization of those claims as something other than the review of a TSA order.").

require a change to the SOP. Thus, the plaintiff's process concerns cannot be divorced from her substantive concern (avoiding pat-downs) such that her claim can be heard without implicating review of the SOP. And under § 46110, that review can only occur in the court of appeals.

This conclusion is reinforced by the plaintiff's allegations to the effect that "reasonable" alternatives to the pat-down procedure exist and could be offered to her. (ECF 32 at ¶40.) For example, she suggests that the pat down could be modified or canine screening could be conducted. (*Id.*) But the plaintiff does *not* allege that TSA's SOP actually provides for any of her suggested alternatives.[3] If a reviewing court determined that no alternatives that would avoid the alleged harm to the plaintiff are in fact available under the SOP, then the only way to grant relief would be to order TSA to "amend, modify, or set aside," 49 U.S.C. § 46110, parts of the SOP so as to provide for such alternatives. That relief is only available in the courts of appeals.

In sum, evaluating the plaintiff's Rehabilitation Act claim necessarily entails an evaluation of *all* of TSA's screening policies and procedures associated with how travelers experience AIT screening and alarm resolution pat-downs (rather than a narrow focus on the processes for seeking an accommodation), to include the pat-down screening procedures that are unmistakably integral to any injury that plaintiff alleges and are set forth in the SOP. *See, e.g., Thomson v. Stone*, No. 05-cv-70825, 2006 WL 770449, at *6 (E.D. Mich. Mar. 27, 2006). Thus,

---

[3]To be clear, the plaintiff stated wholly conclusory allegations that the SOP "explicitly allows for the provision of disability accommodations," (ECF 32 at ¶60), but there are no specific, reasonably detailed allegations as to the types of accommodations that are available and under what circumstances. And most critically, there is no allegation that the SOP actually allows for an alternative to the pat-down procedure that is allegedly harmful to the plaintiff. At best, the plaintiff speculates with no further support that her alleged harm could be remedied by "identify[ing] an accommodation that would be in accordance with existing TSA policy." (ECF 32 at 40). If that speculation is incorrect, any remedy would actually require changing the SOP. And even if the plaintiff's speculation is correct, adjudicating her claim to identify an accommodation permissible under the existing SOP would still obviously implicate the type of evaluation and scrutiny of the SOP that § 46110 is meant to prohibit in district court.

4

despite the plaintiff's attempt to present her claim as narrowly focused on alleged deficiencies surrounding accommodation request processes, her claim remains inescapably intertwined with review of the SOP. This court should not allow her to circumvent § 46110 by cherry picking one aspect of TSA's security screening operations and insisting that her claim hinges on that alone.[4]

### III. Section 46110 applies to Plaintiff's purportedly "facial" challenge.

The plaintiff also seeks to circumvent the applicability of § 46110 by labeling her Rehabilitation Act claim as a "[b]road facial" challenge that is "considered outside the scope" of the channeling of claims involving review of a TSA order to the courts of appeals. (ECF 35 at 4.) That effort founders, however, on the fact that courts have consistently found putatively "facial" challenges—constitutional or otherwise—to TSA security screening actions to be inescapably intertwined with review of policies and procedures set forth in an agency order (such as the SOP) and thus subject to § 46110.[5]

Plaintiff's mistaken contention appears to be predicated on a misreading of the case law cited in her brief. (*See* ECF 35 at 4) (citing *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4 (D.D.C. 2014); *Merritt v. Shuttle, Inc.* ("*Merritt II*"), 245 F. 3d 182 (2d Cir. 2001); *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994); *Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006).) None of the cited

---

[4] To the extent the plaintiff remains concerned, as she previously asserted, that an "appellate court would be ill-equipped to address" her claim, (ECF 22 at 10; *see also* ECF 35 at 6 (arguing it "would not be sensible to have an appellate court consider" her claim)), that concern is misplaced. *See, e.g., Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012) (explaining that "§ 46110 does not deny" meaningful judicial review and that appellate courts are able to ensure a sufficient administrative record to rule on the merits of a challenge to TSA screening procedures); *Durso*, 795 F. Supp. 2d at 72-73 (rejecting argument that review of claims by an appellate court under § 46110 offends due process).

[5] *See, e.g., Durso*, 795 F. Supp. 2d at 71 (rejecting "plaintiffs' argument that broad constitutional challenges are categorically exempt from intertwinement analysis"); *Corbett*, 458 F. App'x at 871 (holding that "Corbett cannot escape the jurisdictional limitations of § 46110 by claiming that he asserts a broad constitutional challenge" because such a challenge "is inextricably intertwined with the SOP").

decisions identified a "facial" challenge that was beyond the ambit of § 46110 and therefore allowed to proceed in district court. *Merritt* and *Mace* predated the creation of TSA, and the two decisions actually involving TSA orders, *Amerijet* and *Gilmore*, both held that district courts lacked subject-matter jurisdiction over the purportedly "facial" claims presented. While dicta in these cases suggest that it might be *possible* to state a facial challenge to agency action taken pursuant to an "order" within the meaning of § 46110 that is *not* inescapably intertwined with review of the order itself, in each case, the court found that it was not confronted with that type of claim. Indeed, such a claim appears vanishingly rare, and the plaintiff has failed to present any judicial decision identifying one and allowing it to proceed in district court. *See Amerijet*, 43 F. Supp. 3d at 15 ("That a plaintiff describes its claims before a district court as [facial] constitutional challenges to agency action does not guarantee avoidance of § 46110(a)'s grant of exclusive jurisdiction because such claims quite often remain inescapably intertwined with the TSA order at issue.").

First, in *Amerijet*, the court concluded that the plaintiff's purportedly "facial" challenge to a TSA order (a Security Directive) was in fact "nothing more than an 'as-applied challenge'" because it required the court "to evaluate how the agency acted in regard to applying the Security Directive specifically to" the plaintiff. 43 F. Supp. 3d at 18-19. The court further explained that the plaintiff's claims sought "review of the TSA's implementation, interpretation, and enforcement of the [directive]," and those issues were "clearly inescapably intertwined with a review of that order." *Id.*

Second, in *Gilmore*, the court likewise found that most of the plaintiff's claims attacking a TSA Security Directive requiring "airline passengers to present identification . . . or be subject to a search that is more exacting" were "as-applied challenges as opposed to broad facial

6

challenges" because they arose "out of the particular facts" of the plaintiff's alleged experience at the airport. 435 F.3d at 1129, 1133 n.9.[6] But the court also separately addressed the plaintiff's Fifth Amendment Due Process claim that was arguably a true facial challenge to agency action concerning the Security Directive. The plaintiff claimed that TSA's "failure to provide adequate notice" to the public of the directive and what it required violated the right to due process and rendered the directive unconstitutionally vague. *Id.* at 1135. Despite the plaintiff there framing his claim as a facial constitutional challenge to agency action—keeping the Security Directive secret from the public—the court found that the claim was nonetheless "'inescapably intertwined' with a review of the [directive] because it squarely attack[ed]" TSA's policies and procedures "with respect to airport security." *Id.* at 1133 n.9.

Third, the "broad facial challenge" argument traces its roots to a Ninth Circuit decision that ultimately involved *Bivens* claims. In *Mace*, the Ninth Circuit held that § 46110 did not deprive a district court of jurisdiction to hear *Bivens* claims asserting "broad challenge[s] to allegedly unconstitutional FAA practices," but again qualified that by noting that such challenges are "not based on the merits of [the plaintiff's] individual situation." 34 F.3d at 859. That holding was based in part on the fact that the plaintiff's claims were "seeking to recover damages, a remedy not" available on a petition for review filed under § 46110. *Id.* at 858.[7] Unlike *Mace*,

---

[6]A similar example from this circuit is provided in *Merritt v. Shuttle, Inc.* ("*Merritt I*"), 187 F.3d 263, 272 (2d Cir. 1999). There the court rejected an argument that a Fifth Amendment due process claim was outside of the scope of § 46110 because it did "not mount a broad-based attack on the FAA's practices or policies" and instead was based "only [on] the circumstances" of his particular case and the conduct of FAA officials with respect to that particular case. *Id.*

[7]The *Durso* court described the rule in the Ninth Circuit as follows: "broad constitutional challenges are not inescapably intertwined *if they seek damages*." 795 F. Supp. 2d at 71 (emphasis original) (citing *Americopters, LLC v. FAA*, 441 F.3d 726, 741 (9th Cir. 2006) ("In principle, a district court may decide a claim for damages because § 46110 does not grant the court of appeals jurisdiction over this form of relief.")).

7

The plaintiff here has not asserted *Bivens* claims against individual defendants to seek money damages that would be unavailable at the appellate level. Instead, Plaintiff only seeks changes to TSA security screening to accommodate her particular circumstances, relief readily available from a court of appeals under § 46110. *See, e.g.*, *Ruskai*, 775 F.3d 61, 65 (1st Cir. 2014) (finding jurisdiction over denied accommodation regarding screening procedures). And in any event, the Second Circuit has made clear that *Mace* is not "the settled law of this Circuit," and it expressly declined to "decide whether a broad-based, facial constitutional attack on an FAA policy or procedure—in contrast to a complaint about the agency's particular actions in a specific case—might constitute appropriate subject matter for a stand-alone federal suit" in district court. *Merritt I*, 187 F.3d at 271-72; *see also Durso*, 795 F. Supp. 2d at 71 n.7 (noting that the Second Circuit's decision in *Merritt I* "does not confirm that a constitutional-challenge exception to the intertwinement doctrine exists").

Finally, *Merritt II* is simply inapposite as it did not address a "facial" challenge to an agency action under the Constitution or a statute. Instead, the court considered a negligence claim asserted against the United States under the FTCA and held that the claim was not barred in district court by § 46110 because it could be adjudicated without involving review of an FAA order suspending the plaintiff's pilot certificate. *See* 245 F.3d at 189 (explaining that the negligence claim did not attack "the matters decided by the administrative order").[8]

Turning to this case, the plaintiff appears to still contend, as she previously asserted in prior briefing, that her Rehabilitation Act claim "raises broad facial challenges about . . . the defendant's approach to disability accommodation requests." (ECF 22 at 11). But as in the cases

---

[8] Like the *Bivens* claims in *Mace*, the negligence claim in *Merritt II* also sought money damages that are not available as a remedy on a petition for review under § 46110.

8

discussed above, the plaintiff's claim is necessarily of the as-applied variety, as it relies on the alleged facts of her own particular experiences with security screening and with attempting to seek an accommodation. (*See* ECF 32, ¶¶32-36, 59, 61.) As with almost any accommodation-related claim, the plaintiff's claim here necessarily depends on individualized facts and circumstances, including how the SOP was applied to her, the nature of her disability, her efforts to seek an accommodation, and TSA's communications with her personally. Indeed, the Amended Complaint makes this point express by pleading that the defendant "discriminates against *Plaintiff's* participation the program or activity" of "TSA security screening" by refusing to provide her with any accommodation from pat-down procedures. (*Id.* at ¶58 (emphasis added).) The gravamen of the plaintiff's claim appears to be that TSA's overall treatment of *her specifically*, including both the agency's application of the SOP to her at screening checkpoints and the agency's responses to her inquiries about accommodations, violates the Rehabilitation Act. The plaintiff's claim is thus more akin to the as-applied challenges in *Gilmore* and *Amerijet* than the type of facial challenge that could arguably be outside of the scope of § 46110. Regardless, even if the plaintiff's Rehabilitation Act claim can be construed as a broad-based facial challenge, adjudication of the claim would be inescapably intertwined with review of the agency's SOP as explained above in part II.

**IV.     Section 46110 is not limited to adjudicatory orders.**

The plaintiff appears to assert that § 46110 and the concomitant inescapable-intertwinement doctrine apply only to orders issued at the culmination of an adjudicatory process or "administrative proceeding." (ECF 35 at 5.) That is incorrect. In fact, "the term 'order' in [section 46110] should be read expansively," *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007), and the statute's claims-channeling provision applies broadly to any agency

9

order that "mark[s] the consummation of the agency's decisionmaking process" and determines "rights or obligations or give[s] rise to legal consequences," *id.* (quotation omitted), "regardless of whether there has been an administrative process" or formal proceeding, *Durso*, 795 F. Supp. 2d at 71. In *Durso*, the court rejected the same argument the plaintiff appears to present here. The plaintiff contends that no "administrative proceeding considered [her] disability accommodation request." (ECF 35 at 5; *see also id.* at 6 (asserting that "the defendant never considered or made any decision on any disability accommodation request from the plaintiff").) The *Durso* plaintiffs similarly argued that TSA's screening procedures were established by the "unilateral agency action" of issuing the SOP without any "true administrative process." 795 F. Supp. 2d at 71. The court explained that the lack of previous administrative proceedings was irrelevant to the § 46110 analysis, as "avoiding relitigation of agency proceedings is not the only purpose" of the statute, and another "prime rationale therefor is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts." *Id.* (quotation omitted); *see also Roberts*, 798 F. Supp. 2d at 10. In this case, Plaintiff has not presented any authority or persuasive reasoning undermining the uniform case law finding that TSA's SOP establishes how airport security screening unfolds, and the SOP is an order under § 46110. *See Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1042-43 (D. Minn. 2011) (rejecting arguments that TSA's SOP is not an "order").

**V.      Defendant takes no position on transfer to the D.C. Circuit.**

This court has discretion to transfer this case to the D.C. Circuit under 28 U.S.C. § 1631. The defendant takes no position on the plaintiff's request for such a transfer, but expressly reserves its right to assert any and all defenses to a petition for review if the matter is transferred to the court of appeals.

        Respectfully submitted,

        Vanessa Roberts Avery
        United States Attorney

          /s/
        John W. Larson (ct28797)
        Assistant United States Attorney
        District of Connecticut
        450 Main Street, Room 328
        Hartford, CT 06103
        T:  (860) 947-1101
        F:  (860) 760-7979
        john.larson@usdoj.gov